IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN DAVIS,** | ) | |
|     **Plaintiff** | ) | |
| | ) | **C.A. 05-202 ERIE** |
|     v. | ) | **District Judge McLaughlin** |
| | ) | **Magistrate Judge Baxter** |
| **Dr. COLLINS, et al.,** | ) | |
|     **Defendants.** | ) | |

# MAGISTRATE'S REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

It is respectfully recommended that Defendants' motion to dismiss or, in the alternative motion for summary judgment [Document # 19], be granted.

## II.    REPORT

On July 1, 2005, Plaintiff Brian Davis, an inmate incarcerated at the Federal Correctional Institution at McKean, Pennsylvania ("FCI-McKean"), filed this *pro se* civil rights action pursuant to Bivens v. Six Unnamed Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702-706.  Named as Defendants are:  Dr. Collins ("Collins"), Chief Dental Officer at FCI-McKean; Dr. Olson ("Olson"), Clinical Director at FCI-McKean; R. Smith ("Smith"), Chief Administrator of FCI-McKean's Health Services Department; C. Montgomery ("Montgomery"), Assistant Administrator of FCI-McKean's Health Services Department; and John or Jane Doe ("Doe"), Associate Warden at FCI-McKean.

Plaintiff alleges that his rights under the eighth amendment to the United States Constitution have been violated as a result of Defendants' "acting arbitrarily, capriciously, and abusing their discretion in withholding reasonable and adequate dental care from [Plaintiff]." (Document # 14, Amended Complaint, at p. 2). In particular, Plaintiff characterizes his claims as follows:

> Again, [Plaintiff's] complaint alleges that he developed an abcess that was easily treatable; that he was evaluated by an oral surgeon who assessed that further prescription of antibiotic medication to treat [Plaintiff's] abcess would be futile; that a valid need existed as to why [Plaintiff] should be examined by an oral surgeon; that the oral surgeon recommended a procedure to properly remedy [Plaintiff's] infection on the basis that [Plaintiff's] number 8 tooth was preservable; that the oral surgeon's recommendation was approved by a medical doctor and those in the position to either concur with or reject the oral surgeon's recommendation; that the defendants were well aware of the oral surgeon's findings regarding the use of antibiotic medication to further treat [Plaintiff's] infection and his recommendation to pursue an apicoectomy; that the defendants deliberately and recklessly disregarded this finding and recommended course of treatment, and instead pursued a course of treatment that was easier, ineffective, and less expensive; and that as a result of the defendants' deliberate indifference and reckless disregard to [Plaintiff's] serious dental needs, [Plaintiff] suffered extensive pain and discomfort, and irreparable and permanent physical injury.

(Document # 25, Plaintiff's Brief, at p. 27).

As a result of these claims, Plaintiff seeks compensatory and punitive damages, and injunctive relief.[1]

---

[1] The injunctive relief sought by Plaintiff consists of an order "direct[ing] the Bureau of Prisons to dismantle its policy or custom that enables the staff members in charge of the Health Service department here at FCI McKean to exclusively pursue extraction of infected teeth that does not respond to antibiotic treatment over proper, adequate, and effective means of treatment that otherwise would preserve the life of the teeth that are in need of dental care." (Document # 14, Amended Complaint, at p. 17).

Defendants have filed a motion to dismiss, or in the alternative, for summary judgment, arguing that Plaintiff's claim of medical mistreatment does not rise to the level of a constitutional violation.[2] Plaintiff has filed a brief in opposition Defendants' motion and Defendants have filed a reply brief. This matter is now ripe for consideration.

### A.     Relevant Factual History

Plaintiff was first seen in FCI McKean's Dental Clinic on May 27, 1994. At that time a root canal was performed on Plaintiff's number 8 tooth, after which he was prescribed Penicillin and Motrin. (See, Declaration of Monica Recktenwald attached as Exhibit 2 to Document # 20 ("Recktenwald Declaration"), at ¶ 3a). On June 7, 1994, Plaintiff was seen by FCI-McKean's Dental Officer, at which time Plaintiff agreed to have the crowns cut from his teeth numbers 7 and 8. After the crowns were cut, a polished crown was applied to tooth number 7, and it was noted that a composite crown may have to be placed on tooth number 8. (Recktenwald Declaration at ¶ 3d). On July 25, 1994, the Dental Officer noted that the lingual portion of the incisal composite of Plaintiff's tooth number 8 was chipped and discolored. As a result, smoothing and application of a facial veneer of the lingual portion of tooth number 8 was performed. (Recktenwald Declaration at ¶ 3e).

---

[2] Defendants also make several arguments based on their assertion that Plaintiff's complaint should be construed as an action under the Federal Torts Claim Act ("FTCA"), because it is essentially a medical malpractice claim. (See Defendants' Brief at p. 39). In particular, Defendants claim that Plaintiff did not exhaust his administrative remedies under the FTCA; Plaintiff failed to comply with mandatory certificate of review/affidavit requirements of the FTCA; and venue in this Court is improper under the FTCA. However, the United States is not the named Defendant in this case and Defendants have not sought the substitution of the United States as the Defendant in this case. As a result, this Court declines to construe Plaintiff's Complaint as an FTCA action and will not address further Defendants' arguments based on such a construction.

On January 19, 1995, Plaintiff was seen by FCI-McKean's Dental Officer, at which time Plaintiff complained of cold sensitivity in tooth number 8. He was assessed with a possible failure of the root canal and was prescribed Penicillin. (Recktenwald Declaration at ¶ 3j). On January 24, 1995, Plaintiff returned to the Dental Clinic with complaints of a toothache at tooth number 8. After examination, Plaintiff's medications were changed to Keflex, Flagyl, and Motrin. (Recktenwald Declaration at ¶ 3k).

Plaintiff returned to the Dental Clinic on May 8, 1995, complaining of swelling at tooth number 8. After an x-ray was taken, Plaintiff was assessed with recurrent tooth abcess, Plaintiff's medications were continued, and the Dental Officer recommended that the tooth be extracted during Plaintiff's next visit. (Recktenwald Declaration at ¶ 3l). Plaintiff returned to the Dental Officer on May 11, 1995, and requested a second opinion regarding the extraction of tooth number 8. He was assessed with failing root canal therapy, and was advised to complete taking his medications and that an extraction of the tooth would be the likely course of treatment if the infection persisted. (Recktenwald Declaration at ¶ 3m). On May 25, 1995, Plaintiff asked the Dental Officer about the tooth extraction because of the persistent infection. Upon oral examination, a large buckle or facial swelling was observed and the end of the root of tooth number 8. Plaintiff was assessed with non-restorable failed root canal treatment and was scheduled for a tooth extraction. (Recktenwald Declaration at ¶ 3n).

On June 5, 1995, Plaintiff returned to the Dental Officer and reported that the swelling had decreased and he opted to wait until the infection recurred before having the tooth extracted. (Recktenwald Declaration at ¶ 3o). On July 14, 1995, Plaintiff reported to the Dental Officer for an x-ray of tooth number 8, which revealed a slightly trabeculated abcess, with potential healing.

He was assessed with persistent root canal abcess and failing root canal therapy, for which he was prescribed Penicillin. At the time, Plaintiff indicated his desire to delay the tooth extraction as long as possible. (Recktenwald Declaration at ¶ 3q).

On May 9, 1996, an x-ray of Plaintiff's tooth number 8 was taken, which revealed recurrent periapical abcess around the tooth associated with a failed root canal. It was recommended that Plaintiff be evaluated by an oral surgeon for an apicoectomy of tooth number 8. (Recktenwald Declaration at ¶ 3s). Plaintiff was subsequently seen by an oral surgeon on July 22, 1996, who recommended an apicoectomy with retrofill. The oral surgeon indicated that the procedure could be done in his office with local anesthesia for $ 280.00. (Recktenwald Declaration at ¶ 3t).

On March 30, 2004, bite wing x-rays of Plaintiff's teeth were taken, which revealed bone loss and exudate at tooth number 7, and an abcess at the root apex of tooth number 8.[3] (Recktenwald Declaration at ¶ 3ff). On July 15, 2004, Plaintiff reported to the Dental Officer that pus-like material was coming from his gum. He was assessed with failed root canal therapy at tooth number 8 and was advised that he would need a tooth extraction or a root canal could be re-done. (Recktenwald Declaration at ¶ 3kk). On September 7, 2004, Plaintiff was seen by the Dental Officer for a comprehensive dental examination, including an oral cancer examination. (Recktenwald Declaration at ¶ 3mm). On December 2, 2004, Defendant Collins noted that FCI-McKean's Utilization Review Committee denied the apicoectomy recommended by the oral

---

[3] Between July 22, 1996 and March 30, 2004, Plaintiff received routine dental care and treatment for swollen gums and abcesses affecting teeth other than tooth number 8 at issue in this case. (Recktenwald Declaration at ¶¶ 3u - 3ee).

5

surgeon on July 22, 1996. (Recktenwald Declaration at ¶ 3qq).

On December 21, 2005, Plaintiff was examined by Kenneth Cho, D.D.S., Regional Dental Consultant for the BOP. (See Declaration of Kenneth Cho, D.D.S., attached as Exhibit 1 to Document # 26 ("Cho Declaration"), at ¶ 1). After examination, Dr. Cho informed Plaintiff that teeth numbers 7 and 8 were in poor condition and were non-restorable. (Cho Declaration at ¶ 5). After possible courses of treatment were explained to him, Plaintiff expressed a desire to have his teeth extracted immediately, and the extractions were conducted later the same day. (Cho Declaration at ¶¶ 6, 8). During the extraction of tooth number 8, Dr. Cho observed that there was a mid-root perforation, indicating that an apicoectomy would not have worked. (Cho Declaration at ¶ 8).

### B.     Standard of Review

#### 1.     Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). See also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader

is entitled to relief. The issue is not whether the plaintiff will prevail at the end but whether he should be entitled to offer evidence in support of his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 419 U.S. 232 (1974). However, a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) citing In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir.1997). Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must only set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted. See Swierkiewicz.

### 2. Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v.

American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

      The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

      A material fact is a fact whose resolution will effect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v.

DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### 3.    *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should be done so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

### C. Discussion

#### 1. Eighth Amendment Claim

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[4] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted).

---

[4] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

While at FCI-McKean, Plaintiff was seen by dental staff a total of 34 times for treatment and/or cleaning of his teeth, from May 27, 1994, through December 2, 2004. (See Recktenwald Declaration at ¶¶ 3a - 3qq). During this time, a root canal was performed on his number 8 tooth, and various medications were prescribed for post-root canal treatment and for the abcess that developed as a result of the failed root canal. This plethora of dental treatment belies Plaintiff's claim that FCI-McKean's dental staff was deliberately indifferent to his dental needs.

As early as May 8, 1995, Plaintiff was advised by FCI-McKean's Dental Officer that Plaintiff's number 8 tooth was non-restorable and that extraction of the tooth was recommended. (Recktenwald Declaration at ¶¶ 3l-3n). Nevertheless, Plaintiff chose to forego the extraction, indicating that he wanted to delay the tooth extraction as long as possible. (Recktenwald Declaration at ¶¶ 3o and 3q). Plaintiff then obtained an opinion from an oral surgeon recommending an apicoectomy and decided he would rather have that procedure than an extraction. (Recktenwald Declaration at ¶ 3t). After FCI-McKean's Utilization Review Committee denied the apicoectomy on December 2, 2004, this action ensued. Thus, this is clearly a case involving Plaintiff's disagreement with the course of treatment that was recommended by FCI-McKean's dental staff; however, a prisoner's disagreement with a course of treatment does not sustain a cognizable constitutional claim. Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1080 (3d Cir. 1976).

Furthermore, to the extent Plaintiff may be claiming that Defendants' deliberate indifference arose from their failure to approve and/or conduct an apicoectomy soon after the procedure was recommended by Plaintiff's oral surgeon, and that this delay caused the condition of his tooth to worsen to the point that it required extraction, this argument must also fail. As

11

previously indicated, after the ultimate extraction of Plaintiff's number 8 tooth, Dr. Cho opined that an apicoectomy would not have worked, given the non-restorable condition of the tooth.[5] Thus, extraction of the tooth was inevitable.

Based on the foregoing, Defendants should be granted summary judgment with regard to Plaintiff's eighth amendment deliberate indifference claim.

### 2. APA Claim

The APA provides, in pertinent part, that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Plaintiff claims that "[t]he Utilization Review Committee at FCI McKean to arbitrarily and unjustifiably pursue extraction of inmates infected teeth over less intrusive methods of dental care violates the requirements of the APA, and has deprived [Plaintiff} of his entitlement to non-invasive, proper, and adequate dental care." (Document # 25, Plaintiff's Brief, at p. 34).[6] This claim is without merit. The decision of the Utilization Review Committee ("URC") to deny Plaintiff's request for an apicoectomy was, in fact, justified by Dr. Cho's opinion that an apicoectomy would not have worked, given the non-restorable condition of Plaintiff's tooth. Thus, the

---

[5] This opinion further reinforces the much earlier May 25, 1995, opinion of FCI McKean's Dental Officer that Plaintiff's tooth was non-restorable. (Recktenwald Declaration at ¶ 3n).

[6] Reference is made to Plaintiff's characterization of his claim in his reply brief because the allegations of Plaintiff's amended complaint are far from clear. Thus, every effort is being made to construe Plaintiff's claim in the light most favorable to him.

URC's decision was well-founded and in compliance with the duty imposed on prison officials "to provide proper care, treatment and protection of federal prison inmates... and to provide necessary medical treatment ..." under 18 U.S.C. § 4042.  Accordingly, Plaintiff's APA claim should be dismissed.

### III    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss or, in the alternative for summary judgment [Document # 19], should be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

S/Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated: June 29, 2006

cc:    The Honorable Sean J. McLaughlin
       United States District Judge

13